Good morning, I am Tanya Rose arguing on behalf of Appellant Randall Anderson. Can we get you to put that microphone right... Which way? Closer to you and speak right into it. Okay. All right. And I would like to save five minutes for rebuttal. Okay, you're Tanya Rose? I am. Okay, go right ahead. Brief review of the facts in this case, in this implied in fact contract employment case. Randall Anderson was employed by Southern Pacific in 1996 as a special agent, which is the railroad term, which has its own interesting history now, for a police officer. He, in or around late 1997, Southern Pacific merged with Union Pacific. And around the time he became an employee of then Union Pacific, he was given policies regarding, among other things, what is to occur in the case of discipline and termination. His employment with Southern Pacific was at will, is that correct? I disagree. What I would say is this is he signed an employment application, which in my belief and which I will get to later, in California is considered, well, it's a solicitation for employment, and one is allowed under proper circumstances to introduce parole evidence according to law of California to show subsequent modifications of such agreement. In any event, your argument here is that based on information provided by Union Pacific, including the disciplinary policy, if he, even if he had been at will before, he was not at will at that point. That is the argument. Or at the very least, there are tribal issues of fact. That he may have been employed under an implied contract not to terminate, except for good cause. In any case, he continued to work. In talking about that point, in looking at cases like Davis versus Consolidated Freightways, why does the existence of a discipline policy that lays out a system of progressive discipline overcome the presumption of an at-will employment? And if we assume for the sake of the question that he was an at-will employee, at least until the merger. So to me, the distinguishing factor with respect to the Davis case versus Consolidated Freightways is this, and it seems to me very material. The policy at UP has explicit language in it, and I can turn to it if you give me a moment, which says the general director may dismiss a department member at any time for just cause. It has explicit just cause language. This goes beyond, if you will, just a progressive discipline policy, and to me, I find that to be a fundamental difference between the holding of, for example, the Davis  case. But the logic of Davis is basically, look, just because you have a discipline system where you have progressive discipline can't overcome the at-will status, because otherwise the employer would be in the position of saying you're going to fire, you face the choice of firing someone or disciplining. I mean, fire them or keeping them without any system of discipline. So you would agree that the fact of a discipline system doesn't mean anything in terms of the at-will status, correct? I would agree that the law has developed in California and likely in most states that have implied contract causes of actions remaining, that in and of itself a progressive discipline policy is not sufficient to overcome the presumption of at-will employment. All right. So your only argument, if I'm understanding it, and I'm just – is that the difference between Davis and this case is simply the language in this policy about good – or just cause. Is that it? Yes. And while, with all due respect, when you frame it that way, it sounds immaterial, the truth is that the language of just cause is sort of the gold standard of the antithesis of at-will employment. Right. But then when it comes – when they come along later and say, look, when we provided this policy, we didn't mean to shift anyone's status, what does that mean in terms of your client? Because we're talking about a course of dealing, and if there's a subsequent – the argument would be, and you've heard it, that, look, if there were any ambiguity about whether somebody's status had changed, we clarified that. How do you respond to it? If I understand your question – I'm not sure I understand your question. Are you referring to the evidence in the case? Yes. Subsequently, they sort of clarified what – that by putting in this progressive discipline, we didn't mean to, in effect, you know, give up our right for, you know, fire at will. So I would respond as follows. This is – this is what my argument is, and it feels clear to me, that at the time, contemporaneous or an hour later with the issuance of this new at-will policy language was an email which says, do not interpret this as a change in the way we administer discipline or blah, blah, blah, blah, blah. Excuse me. Or to words to that effect. And the clarification email, if I may say so, supports my argument that, in fact, there was a lack of total clarity about what it meant, because there are so many factors that, at least under California law, in my opinion, are allowed to come in, parole evidence to show, indeed, that there was an implied contract that one couldn't be terminated except for good cause. So – and that – by the way, that email was issued subsequent to my – to appellant's termination. Can I – I don't mean to take you away from your argument, but let me just say, assuming we – I agree with your position, okay, wasn't there just cause here? Isn't this just, you know, sort of harmless error in a way? I firmly believe, A, no, there was not just cause, but, B, that the law is pretty clear that unless there's something extremely egregious, which has never been totally articulated in my research, the question of whether there was, in fact,  This has been emphasized again and again. In my opinion, there has been sort of a distortion by the employment bar of the holding of the Cotran v. Rollins-Hutting Hall. It's frequently cited for the proposition, and was in this case cited for the proposition, that managerial discretion is broad and there's great latitude, and in this case, appellee cited it for the proposition that, therefore, even though the trial court didn't decide the issue, there was just cause, and this court should find so under the circumstances. Indeed, the Cotran case stood for the proposition that it is not for the jury to decide – have mini-trials on pieces of evidence that came to bolster what was a decision by the employer to terminate an employee. It is for the jury to decide whether a good-faith investigation took place and the reason for termination was not capricious or arbitrary. So to me, the question – the answer to your question is respectfully no. This is – first of all, the trial court chose not to make that decision. They said, since we do not see – we don't find that there's an implied contract, we're not going to get to the question of good cause. And secondly, that this is a question that's clearly within the purview of the jury. So if they fired the guy for interfering with the investigation, okay, by violating the instruction to not to talk to any of the other witnesses, a jury could override that judgment. Now, I realize the record indicates they didn't base their decision on that, but doesn't Caltran stand at least for the proposition that a jury can't overturn that decision, which on its face seems reasonable? That's not what I understand the holding of Caltran to be, nor do I understand the jury instruction that came after Caltran that was developed. There was a jury instruction in California under the Casey instructions called – well, anyway, it just talks about managerial discretion. I believe it's still a question of fact. The record reflects that Appellant believed that – his testimony is that he was asked not to discuss it. He was not ordered not to discuss it. His declaration also states that he, as an investigator himself for years, it was part of his function, would never tell people what to say during an investigation. He wanted to advise them of their right to counsel. I'm – it's at 457. The problem was he probably should have gone to a lawyer immediately. He should have come to you. I don't know how to answer that one. So I'm going to – It sounds like a compliment to me. Pardon? It sounds like a compliment. Oh, I'll take it as such. I have 439 left, so I'm going to save my time. Okay. Thank you. We'll hear from Union Pacific. Ms. Quinn. Yes, thank you, Your Honors. Good morning. Stephanie Quinn for Union Pacific. We've heard a lot about the discipline policy this morning. We talked about that. But there's one huge hurdle that plaintiff needs to get over before we even talk about the factors on whether an implied contract can be inferred in this particular circumstances. And that, the Court alluded to earlier, is the employment application. I want to first address a suggestion I think the Court was making or Ms. Rose was making as far as the merger of the company and what the distinction of that was. Union Pacific and Southern Pacific merged, which means that the contractual rights and obligations of Southern Pacific were subsumed within Union Pacific. So the idea that the contract of employment that Mr. Anderson signed when he came on with Southern Pacific somehow went away at the time the companies merged, there's no support for that. Well, I think part of the question is, was it a contract of employment or just an application which we could use, you could use as evidence to show that he understood it was that well? Now, looking at the document, it says application. It is signed by two parties. What's your argument on it? Well, the, it's definitely an integration. The law is clear. It doesn't have to be an employment contract in order to be binding on Mr. Anderson. It has to be an integration which sets forth the intentions of the parties as to that particular term, which is at-will employment. And there's plenty of case law that indicates that an application of this type can be binding or is binding on someone like Mr. Anderson. And the only cases that find that there is not an actual binding agreement are the cases where that application had really iffy language. For example, the conditions of employment can change at any time. Or if there was a subsequent employment agreement that was signed after the application that didn't include at-will language. So the distinction with this particular application is it specifically includes an integration clause, which means it expresses that it's the final and complete understanding and agreement between the parties as to termination and at-will status. So it specifically states that. And the cases that are cited, including Wagner, which the plaintiff relies on, all talk about if there's an integration clause, that is evidence, conclusive evidence that that was the final expression of intent between those parties. Yes, but I have a little problem. What do you mean? They considered the Southern Pacific employees different than their own? I mean, did they have applicants for Union Pacific sign similar documents? Yes, Your Honor. Of course, there's no applications and evidence from Union Pacific. But there's no distinction. And the evidence that was submitted in summary judgment — Why shouldn't we just assume that they now became employees under human — for Union Pacific and they're going to be treated and they're paid by Union Pacific? They had W-2. It doesn't say former Southern Pacific, you're under a separate regime. Well, the reason for that is — Which often happens when they integrate, you know, unions for when airlines merge, having had a lot of those cases. Right. The distinction there is when there's a merger under the law, that means the rights and obligations of that former company are subsumed within the new company. So there's no distinction. And Mr. Anderson has admitted in his testimony that he understood when he came on with Southern Pacific, his employment was at will. When he — when the company merged with Union Pacific, there was no representations made to the contrary. Let me put the question this way. Suppose there were no ambiguity that in Union Pacific that, in fact, they had to have just courts to fire somebody. And there's no question about it. You mean the former Southern Pacific employees would be stuck with the application, but their own former — their own employees could get the benefit of just courts and no automatic firing? Well, the law is clear that if — Isn't that a little nutty? Well, if the employee signs a contract, he signs an agreement, an express agreement, saying that his employment is at will, meaning the company can terminate him at any time. And under the law — They would treat the employees differently based on that. Well, if there was evidence that Union Pacific had a different policy, but that's not what the evidence is, Your Honor. Well, it's ambiguous, let's say. Well, there's a declaration from Union Pacific's policymaker who says the company policy was always at will employment. So the discipline policy — Issued years after. Well, no. There was a clarification, as you've pointed out this morning, issued years after. And in Davis, which the Court referred to earlier, Davis v. Consolidated Freightways, the same facts were there. There was — the plaintiff had been employed, came on with the company. Years later, the company issued a written at-will policy. And the Court found that to be very important to the analysis. And here, the only evidence — If plaintiff could get past the express agreement, which is really a hurdle, if he can't get past that — Let me stop you there. I don't want to interfere with your train of thought. But my question, do we know from the record whether or not the signature on the employment application by the employer's representative occurred before or after he was hired? By the employer's representative? To me, it makes a difference. I'll tell you why. It's that if it's just we're receiving your application, we're signing it, we haven't decided whether to hire you yet, then it's just an application. If it is, I'm accepting you as an employee, you're hired, and the signature only comes after the person is retained, that's maybe an acceptance of the application and the offer of employment. I don't know from the — I just — do you have that in the record? No. The application from — that's in the record is — only includes Mr. Anderson's signature, but the cases are clear. Even the cases that find that an application isn't an integration are clear that an application signed before the employee actually is hired can constitute an express agreement. There are two signatures, one by the employer, but I just didn't know when that occurred. So if it's only an application, you know, the cases say you can use it as evidence supporting the presumption of at-will employment. But then it's a closer question on whether or not the discipline policy trumps it later, after the merger. Well, if the plaintiff can get past the issue of whether there's an express agreement, then he goes to the presumption, which the presumption is strong, and that's what all the cases say. He has to come forth with competent evidence of a contrary agreement. Right. And so then we're down to the question of just cause, which is in the discipline policy. Right. The policy — So why isn't that enough to raise a tribal issue of fact? Because there has to be more. The Davis court said there has to be more than a discipline policy, because if you're going to impose that type of rule on employers, then no employer is going to have a discipline policy, and they're going to terminate people at whim in order to uphold  I agree with you as far as you go, but your opponent raises the critical differences that I don't see anything in Davis, and maybe I just missed it, that says that had the just cause language. And that may be a distinguishing point here. Right. Why isn't that a distinguishing point? Well, the reason is, is the policy, I think, is being read out of context. The policy doesn't say, and the district court pointed this out in the order, that it doesn't say that they have to have just cause. It goes through a level of what type of, you know, disciplinary process, basically trying to deal with performance issues before, you know, and to give people warnings before taking action. It doesn't say just cause is required. It says that the director can terminate people for just cause. And I think it's, you know, there's really no difference between that. If a person or any of the employees had consulted with a lawyer when they began employment, either yourself or your opponent, how would you have advised them? I would think an ordinary human being who's not a lawyer trained would understand. I have some rights here. And maybe I want to work for a company that says I have, they'll have just cause, they can't just toss me out the door, you know, at whim. I should read nothing into that phrase. Well, unfortunately, it's not to nor for there to be an agreement. There has to be a meeting of the minds. So it can't be one-sided. Mr. Anderson's interpretation of policies. Well, isn't it, your opponent makes the point, if it was so clear, why did they need their subsequent, quote, clarification? Well, the test, the evidence that's in the record that was never disputed by Mr. Anderson is that the policy has always been at will for the company. The police department had their own manual, and that discipline policy was in there. And at some point, somebody decided that they needed to get rid of that discipline, the formal discipline policy, and include the specific at will language. Can we flip over to the just cause? I assume your position is that even if just cause was required, it's present on this record. Absolutely. I'd like to ask you a couple of questions about that. Sure. My understanding is that there were basically three reasons for termination. One, discussing a coworker's sexual preferences with other employees in an inappropriate way. That was one, correct? Yes. The other was inappropriate sexual discussions with other coworkers during a business  That was a part of it. And the third one was violating orders or directions not to discuss the investigation with anyone. Is that all? That's the three reasons? Yes, Your Honor. Were number two or three mentioned in the actual letter given Anderson? I believe there was an indication of his conduct was unacceptable of how he acted when he was on company business, which would reflect the ---- the discussions during the business trip is not mentioned in the letter at all. Am I correct about that? I'd have to look at the letter, Your Honor. Let's assume that it is for the purpose of these questions and that the third one is mentioned, but only as an aggravating factor. Well, the standard ---- Is that right? Yes, Your Honor. The standard here is not whether or not Mr. Anderson actually violated any policies, whether or not him ---- his inappropriate conduct on a business trip was in violation of any policy. The issue is did the employer have a good faith belief that he violated its policies? And was there an investigation that was not capricious? There was a good faith investigation. Was he ever given ---- was Anderson ever given an opportunity to respond to the second allegation? Yes, Your Honor. He was. He was interviewed a second time. And you're talking about the invest ---- the failure to follow the directive of his supervisor about not ---- No, the inappropriate trip discussions. Yes, that was ---- Was he given ---- Solicitation to, you know, stay in my bedroom. Right. And to be fair, and I think the declaration from the police chief who made the decision, you know, that was a less important point of the issue, but definitely played into the process. But he did get an opportunity to address those issues. He was interviewed. He gave a detailed statement, written statement of exactly what happened when he was in Omaha with the dispatchers. And he did get an opportunity to respond to all of the allegations. And the standard is not to give him a jury-like proceeding investigation. All they need to do is do a good-faith investigation, look into the charges, and they made a business judgment that this person is not someone that Union Pacific wants as a police officer with substantial responsibility in a huge territory in northern California. There's no reason why a jury ---- Maybe I misunderstood the record. But as I understood the record, they decided to fire him basically not for failing him to follow the order or the request to not contact, but they made up their mind, as I understood it, basically because of his invitation for them to sleep, you know, in the other bed. The declaration from the police chief who made the decision is clear. There's a discussion that he did ---- he was very upset about the conduct that took place on the business trip. But the reason for the termination was the perceived, what he believed to be a violation of Union Pacific's equal employment opportunity policy, essentially spreading a rumor about a coworker being bisexual. And then when the coworker confronted him, making insensitive comments and further discussion about her sexuality, which is prohibited by the policy in the chief's perspective. But the district court didn't reach the merits of that, right? The court did not reach the merits of that. So if we were to disagree with the district court's analysis of the at-will status, why should we reach the question of harmless error? Because there's no ---- there's nothing for the jury to decide here. All the facts were admitted by Mr. Anderson. Right. But, I mean, there are two factors. One is why shouldn't that be the district court's job? I mean, why should we evaluate facts on record? And two, under Caltran, it appears it might be a jury question. Well, if you look at the result, there's plenty of case law that ---- Or Caltran, I should say, right? Contran. Contran. Contran was a jury case.  But there's other cases like King v. UPS, which is 152 Calat 4, that 426, that made the decision on the summary judgment. There's no reason why this decision can't be made on summary judgment, because the facts are not in dispute. That's the only reason for a jury. Can I go back to the ---- I'm looking at ER-79. Do you have that there? This is the letter on Union Pacific Stationery dated March 24, 2006. This is to Mr. Randall P. Anderson? Yes. This is the termination letter? Yes, Your Honor. Can you show me in that letter where it mentions reason 2? I forgot what reason 2 was on this one. Reason 2 was the inappropriate discussions with coworkers during a business trip. It doesn't specifically refer to ---- It doesn't refer to it at all. It doesn't refer to how we treated the dispatchers, if that's what you're referring to. It refers to the conversation with the dispatchers where he talked about another employee's sexuality. But you're right, Your Honor, it doesn't specifically refer to that. But it's an EEO violation that is referenced here, and in the conduct is speaking about someone's sexuality. That's not in anyone's business. The question then becomes, let's assume the description of this false charge of being gay would violate their EEO policy, but it then isn't, and that would be, the reason would be justifiable, except wouldn't the plaintiff be entitled to show, listen, this kind of talk goes on all the time, and you haven't fired A, B, C, and D for that. Wouldn't that then try to establish arbitrariness? No, Your Honor. That's more of a disparate treatment type of a theory, which the issue of our good cause analysis is what was in the ---- Well, but then it shows lack of good faith. That's the test, isn't it? Well, the problem here is the plaintiff didn't submit any evidence to dispute any of the facts that showed a thorough and good faith investigation, and that the chief of police had a good faith belief that these policies were violated. Mr. Anderson admitted to many, many of the violations that were alleged. So there's no need for a jury to make that determination. Yes, but isn't one of the issues whether they would have been fired as opposed to discipline? No, Your Honor, because if there's an at-will policy, I guess that gets back to the ---- Well, okay. Assuming there's a just cause policy. Okay. Does it all come back to at-will? Well, at the same ---- no. At the same time, even if there's a just cause policy, the Court shouldn't second guess the business decision, and that's what Contran says in cases after it. And I've gone over my time, Your Honors. BR-79 is the termination letter, correct? Yes, Your Honor. Okay. Thank you. Rebuttal? Because of the questions posed to my opposing counsel, I'm going to focus on the issue of the just cause piece. I think that the law is undisputed in California that under normal circumstances the question as to whether just cause exists to terminate an employee is a question of fact to be decided by a judge. But what facts are really in dispute here? There are some minor differences in the stories, who said what. But the central events that caused the problem are really not in dispute, right? If we're to respond to your question, if we're talking about the central facts aren't in dispute, if we're just focusing on the reason for termination in the letter, okay, assuming that it's true that there is no dispute and my client admitted that he made a comment worse to the effect, she may be bisexual, I don't know. What's to me, what the jury question is and what it pretty clearly states is whether that, whether there was a good faith investigation and whether the reason for termination was capricious, arbitrary, or in good faith. How would you argue? I don't want to get too far afield here, but it's the company investigated, they took statements, they went around, and the question is not whether they were right or wrong, but whether they did it and had a fair and honest reason. They had a reason that your client disagreed with, and I understand that. But is there, what's in the record, any evidence of pretext on the part of the company? There is. Or that it's a sham investigation for some other reason? No evidence of that whatsoever, but it seems to me very clear that the law of California still allows a jury, mandates that a jury decide what is good faith. There's a broad latitude. Jury is to decide what is good faith, and a jury is to decide whether a reason is arbitrary or, and mediated by good faith. But in this case, isn't, at the end of the day, it's just your disagreement with the decision, not with necessarily the process? That's the question here? No, that's not necessarily true. I think the investigation could have been, well, I don't know if this is worth going down, but yes, I think there are questions in the way the investigation was handled, whether Mr. Anderson would have been allowed to confront the people who made comments to him. I also think that with regard to the factor that must be taken into consideration, because it's not just whether the investigation, the jury instruction or the question of good cause is not just whether the, that a good faith investigation was conducted or, you know, a fair and full investigation, it's whether the reason itself was, is considered sufficient under the law. And I would argue, if God willing I would get a chance to argue this in front of a jury, I would argue that repeating a comment that somebody may be bisexual does not rise to the level of good cause, of just cause for termination, that there is a host of law out there, at least under, under the government code which shows that doesn't even rise to the level of sexual harassment for many reasons, and that that has to play a part here in what constitutes a good and decent reason under the law. I mean, in my opinion, and it's not my opinion, there is still a cause of action in California for an implied in fact contract to not be terminated except for just cause, and it has been whittled away, and there may be good policy reasons for that. But it still exists, and there are still jury instructions, and it's still a question for the jury to decide. Kennedy. Well, I think you made a nice opening statement for one of the grounds. How would you deal with the other two? One of the? One of the grounds given, namely, the discussion about whether the person was gay or not, how would you answer the, in response to the union's Pacific's position, well, there are these other two grounds. Why wasn't, why wouldn't they be good? First, well, I would take the position that that wasn't the basis, at least the stated basis, for his termination. And even so, there's disputed issues of fact, wildly disputed issues of fact as to how that whole conversation with those women in Omaha went down. And I would finally say with regard to the third reason, it was in aggravating circumstances, and Mr. Anderson would argue that he, that he thought he was asked to, not ordered to say, to not say anything, and that he had no intention whatsoever of instructing them how to, how the investigation, what they should say, only that they wanted counsel. And I've gone over my time. Thank you very much. Thank you. Thank you both. It's a very interesting case, well argued. We appreciate that. Thank you. It's submitted for decision, and the Court will stand in recess for the day. Thank you very much. Thank you.
judges: Trager, Hawkins, Thomas